IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STUART J. PROPER, | ) | Case No. 1:17-cv-208 |
|  | ) |  |
| Petitioner | ) |  |
|  | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | RICHARD A. LANZILLO |
|  | ) |  |
| SUPERINTENDENT CLARK, et al, | ) | MEMORANDUM OPINION AND |
|  | ) | ORDER ON PETITION FOR HABEAS |
| Respondents | ) | CORPUS |

Stuart J. Proper (Proper), an inmate confined at the State Correctional Institution at Albion, initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (the Petition). ECF No. 7. On June 11, 2013, a jury in Venango County, Pennsylvania, convicted Proper of rape of a child, involuntary deviate sexual intercourse with a child, aggravated indecent assault, indecent assault, and corruption of a minor. Proper challenges that conviction by way of fifteen separate grounds for relief. Because none of these grounds merits the grant of federal habeas relief, Proper's Petition will be denied.[1] And, because reasonable jurists would not find this disposition debatable, a certificate of appealability will also be denied.

I.      Factual Background

The Superior Court of Pennsylvania set forth the factual background of this case as follows:

> The victim, C.C., who was eleven years old at the time of the underlying events, lived with her mother ("Mother"), four siblings, and Proper, who was Mother's boyfriend. The jury heard the following testimony:

---

[1] Petitioner and Respondent have consented to the exercise of plenary jurisdiction by a United States Magistrate Judge, as authorized by 28 U.S.C. § 636(c).

[Mother] ... testified that [C.C.] revealed that [Proper] had "put his fingers up inside her and [made] them go real fast" and that such action had "hurt her up inside." [Mother] also testified that [C.C.] said [Proper] grabbed [C.C.'s] breasts and squeezed them and, at some point, was apparently attempting to enter [C.C.] with his "thing" from behind as they were lying together.[ ] [Mother] also testified to another encounter [Proper] had with [C.C.] while [Mother] was out shopping with other children for school clothes for [C.C.'s sister, S.C.]. At that time, according to [Mother], [C.C.] told her that [Proper] made her kiss his "thing" and he again put his fingers up inside her and when done, told [C.C.] not to tell "Mama" what happened as it was a secret. ... The jury also heard testimony from [C.C.]. After establishing the requisite foundation that [C.C.] was a competent witness able to tell the truth and distinguish the difference between a truth and a lie, she corroborated much of the testimony given by [Mother]. [C.C.] testified that the incident occurred in [Mother's] bedroom on the bed where [Proper] squeezed her "boobs" and put his fingers up in her "private spot real hard" and it hurt. [Proper] also kissed her and "rubbed his [private spot] against her [private spot]." She also testified that when her mother and her siblings went to Walmart, that was the occasion when [Proper] made her "lick his dick." This event also occurred in her mother's bedroom, on the bed. [C.C.] also testified that it was at this time [Proper] put his "dick" in her "private spot" and that when he did so it "hurt." Furthermore, the jury actually heard testimony that [Proper] put his penis inside [C.C.'s] vagina on both occasions when there was a sexual encounter between [Proper] and the victim. Furthermore, [C.C.] testified that when she tried to get away and stop licking [Proper's] "dick," [Proper] put his hand on her head to prevent her from getting away and pushed her back down.

The jury heard testimony from Officer Kevin Daley ("Officer Daley"), senior patrol officer in the Oil City Police Department ("OCPD"). Officer Daley testified that what [C.C.] testified to in court was exactly what she told him at the time she and her mother came to the police station to file the initial report.

Trial Court Opinion, 3/19/14, at 5–7.

On June 11, 2013, a jury convicted Proper of the aforementioned offenses. The court imposed two sentences of ten to forty years' incarceration for rape of a child and IDSI, ten to twenty years' incarceration for aggravated indecent assault, and two sentences of nine

months' to five years' incarceration for indecent assault and corruption of minors, with all sentences to run concurrently.

*Commonwealth v. Proper*, 2016 WL 7404620, at *1-2 (Pa. Super. Ct. Dec. 21, 2016) (quoting *Commonwealth v. Proper*, No. 36 WDA 2014, unpublished memorandum at 2–3 (Pa. Super. Ct. July 21, 2014) (brackets in original). Attorney Charles Phillips represented Proper at trial and Attorney Matthew Parson represented Proper at sentencing. ECF No. 19-11 at 43; *id.* at 66.

Proper, through Attorney Parson, filed a direct appeal to the Superior Court on January 2, 2014. ECF No. 19-12 at 7. Proper raised only one claim: that the evidence at trial was insufficient to support the jury's verdict as to the above-referenced charges. ECF No. 19-8 at 39-40. Based on the victim's testimony, the Superior Court found that sufficient evidence supported the jury's findings and, therefore, affirmed the Judgment of Sentence. *Id.* at 83-92. Appellant did not file a petition for allowance of appeal with the Pennsylvania Supreme Court. *Proper*, 2016 WL 7404620, at *2.

On September 5, 2014, Proper filed a timely pro se petition pursuant to the Pennsylvania Post-Conviction Relief Act (PCRA). *Id.* Through appointed counsel, Proper filed an amended PCRA petition on March 7, 2015, and a second amended PCRA petition on June 16, 2015. *Id.* Collectively, Petitioner raised the following grounds for relief:

a) Public Defender Phillips was ineffective for failing "to have the child evaluated to testify."

b) Counsel was ineffective for failing to assert the defense that the child was lying because "her and the family didn't want [Proper] there and other reasons to lie. Money."

c) Counsel was ineffective for failing to prepare for trial. Specifically, trial counsel did not present evidence or witnesses at trial. The Judge also had to "tell Phillips to speak up three times" because the "jury couldn't hear him."

3

d) Trial Counsel for the Defendant was ineffective in failing to explore putting on character witness at trial and for failing to discuss the possible use of such character witnesses with the Defendant. Additionally, trial counsel was ineffective in failing to have a reasonable basis for deciding not to use character evidence on the Defendant's behalf and said character witnesses were known to the attorney and available to testify at the trial[.]

e) Trial Counsel for the Defendant was ineffective for failing to communicate with Kevin Fenstermaker regarding a possible alibi defense. Mr. Fenstermaker would testify to the Defendant being at his residence at the date and times in which the alleged incidents occurred[.]

f) Trial Counsel was ineffective in failing to impeach [the victim] based on her prior statements that were inconsistent with her trial testimony and failing to raise to the jury the statements made by [the victim] to Officer Daily which were inconsistent with her trial testimony.

g) Trial Counsel was ineffective for failing to call or introduce any evidence on behalf of the Defendant or present a defense to the crimes as charged[.]

h) Trial Counsel was ineffective by inaptly advising Defendant about his right to testify and did not properly explain the consequences of not testifying and the rights the Defendant was giving up[.]

i) The sentence imposed by the Trial Court was illegal and in violation of the constitution. The statute imposing the mandatory minimum sentence is unconstitutional and the mandatory minimums as imposed by the Court are illegal and unconstitutional pursuant to *Alleyne v. United States*, 133 S.Ct. 2151 (2013).

ECF No. 7 at 35-36.

The PCRA court held an evidentiary hearing on June 30, 2015. Trial counsel testified that his strategy at trial had been to demonstrate that the victim had made the whole thing up and that he had initially intended to place Proper on the stand to support this defense. ECF No. 19-7 at 7. However, after engaging Proper in sample cross-examination, counsel noted that "he didn't do very well." *Id.* at 9. Proper's "story seemed to keep changing" and he struggled to explain several incriminating responses that he had made during a prior videotaped police interrogation conducted by Officer Daley. *Id.* at 8-9. During that interrogation, Proper had admitted that: he

"could have" sexually assaulted the victim; he drank heavily and "black[ed] out" at times; his ex-girlfriend was to blame because she had allowed the victim to sleep in their bedroom; the victim had initiated sexual activity with him on another occasion; and oral sex with the victim "could have" or "probably" happened. *Proper*, 2016 WL 7404620, at *4. Trial counsel testified that he and the Proper ultimately agreed that it was not in Proper's best interest to take the stand:

> Q:     Now, you said that you did practice questions with him, correct?
>
> A:     Yes.
>
> Q:     He failed horribly?
>
> A:     I think that after we practiced doing the cross or I was – you know, I just gave him a test of what the district attorney at that time would ask because I had done different things with her so I kind of knew her style. After doing that he came to the conclusion, and I agree with him, that it probably wouldn't be a good idea for him to testify.

ECF No. 19-7 at 51. Trial counsel also expressed concern that the prosecution might have played the entire videotaped interview with Officer Daly for the jury if Proper had taken the stand. *Id*. at 9.

With respect to his cross-examination strategy, trial counsel acknowledged that he had made a considered decision not to press the victim to explain the handful of alleged inconsistencies in her statements to police. Those inconsistencies included the number of times she was assaulted by Proper (between 2 and 5), the degree to which she was "penetrated," and the number of times Proper forced her to engage in oral sex. *Proper*, 2016 WL 7404620, at *5. Trial counsel explained that the victim's age and mental disability prevented him from examining her as aggressively as he might have otherwise intended:

> Well, now this minor child was, I think she was 12 or 13, I don't recall exactly. She also is, was a little slow, so because of that I couldn't impeach as aggressively as I would like to. I had to not go easy, but it would not serve my client if I made her cry. I was trying to make the

> things come out that people should take note of like, for instance, it came
> out I believe during her testimony that while she was in the room with
> [Proper] her mother was in the room across the way with the door open.
> That should've sounded to the jury like, how would this stuff happen if
> the door is open and the mother is over there? So, I got that to come out.
> I got that she had imaginary friends, you know, without harping on it,
> because if the jury hears she has imaginary friends for one reason or
> another she has an imagination, maybe she made all this up. I got that
> out of her. And there were a few other points, I don't remember, it was
> awhile back and so I did impeach the witness. I did get vital chunks of
> information out of her. There were a couple other things that were minor
> like whether she called her mother after one of these interactions
> happened. I believe the child said she did and the mother said later when
> I went to impeach her that no, she never called. So, there were a few
> things.
>
>       *      *      *      *      *      *      *      *
>
> Unfortunately, most of her statements on the tape, at preliminary
> hearings, at the trial, what she supposedly told other people and all her
> teachers had testified were very similar.

ECF No. 19-7 at 16-17. As to the degree of penetration, trial counsel explained that he "would

expect a 12 year old to probably be confused about it" and that "the way the statute was written

if there was any penetration no matter how slight he'd still be breaking the law, so arguing about

whether it was three-quarters, five-eighths, it wouldn't help the case." *Id.* at 21-22. Finally,

counsel testified that he didn't want to bring up the victim's prior written statement that Proper

had assaulted her between three and five times, even to impeach her statement at trial that only

two sexual assaults had occurred, because "[w]hether it happened two times or three times or

five times what she said was very consistent and had I said, wait a minute, you said five times

before then maybe she would've 'remember[ed]' other times it happened and it would sound

even worse." *Id.* at 19.

      The trial court denied Proper's PCRA petition on September 23, 2015. ECF No. 7 at 55.

Proper, with the assistance of a new attorney, Pamela Logsdon-Sibley, filed a timely notice of

appeal on October 20, 2015. ECF No. 19-9 at 1. Proper's PCRA appeal raised two issues:

1) Is trial counsel ineffective when he fails to call [defendant] to testify when his defense is that the victim made up the story and cross examination was largely ineffectual in substantially impeaching the victim[?]

2) Is trial counsel ineffective when he fails to cross-examine a witness on inconsistent prior statements when the defense theory is that the witness made up the story out of animosity toward [defendant][?]

*Proper*, 2016 WL 7404620, at *2.

On appeal, the Superior Court credited trial counsel's testimony that Proper performed poorly during a mock cross-examination and found "no merit" to Proper's first ground for relief. *Proper*, 2016 WL 7404620, at *4. The court also noted that Proper had affirmatively and knowingly waived his right to testify after a thorough and probing colloquy by the trial court. *Id.* at *3-4. With respect to trial counsel's cross-examination, the Superior Court agreed with the PCRA court that "allowing the witness the chance to explain three ***additional*** assaults would detrimentally affect his case" and that "it would be unwise to aggressively cross-examine an eleven year [old] sexual assault victim." *Id.* at *6 (emphasis in original). Accordingly, the Superior Court held that trial counsel had "articulated a sound and reasonable strategy for cross-examining the victim" and affirmed the PCRA court's decision to deny relief. *Id.*

Proper, through attorney Sibley, filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court on January 19, 2017. ECF No. 19-13 at 101. The Pennsylvania Supreme Court denied that petition on June 5, 2017. *Id.* at 115. Proper filed the instant 2254 Petition promptly thereafter.

In the instant Petition, Proper raises the following grounds for relief:[2]

> Ground One (a):  Ineffective assistance of trial counsel (IATC) based on attorney Phillips' failure to prepare and present evidence at trial

---

[2] Petitioner's first and second grounds for relief each appear to contain two separate claims. The Court has divided those claims into separate grounds, designated "(a)" and "(b)." The Court also notes that Ground Seven and Ground One (a) appear to be identical.

Ground One (b):        Ineffective assistance of appellate counsel (IAAC) based on attorney Parson's failure to present the victim's prior inconsistent statements regarding penetration on appeal

Ground Two (a):        IATC based on attorney Phillips' failure to explore and discuss character witnesses with Proper

Ground Two (b):        IAAC based on attorney Parson's failure to take a direct appeal to the Pennsylvania Supreme Court

Ground Three:          IATC based on attorney Phillips' failure to communicate with alibi witnesses or call Kevin Fenstermaker to testify

Ground Four:           IATC based on attorney Phillips' failure to impeach the victim's testimony on prior inconsistent statements

Ground Five:           IATC based on attorney Phillips' failure to have the victim evaluated to testify

Ground Six:            IATC based on attorney Phillips' failure to present the victim's motives to lie to the jury

Ground Seven:          IATC based on attorney Phillips' failure to present any defense or evidence

Ground Eight:          IATC based on attorney Phillips' failure to properly advise Proper as to his right to testify

Ground Nine:           Proper's sentence violated Alleyne v. United States

Ground Ten:            Proper's appellate counsel and the PCRA court refuse to provide a secret tape recording which would prove him innocent

Ground Eleven:         PCRA attorney Sibley was ineffective based on her failure to produce the secret tape recording

Ground Twelve:         Proper's official court transcript was redacted to remove his testimony that he asked for an attorney during police interrogation

Ground Thirteen:       Proper's trial counsel should not have been allowed to withdraw so close to trial

Ground Fourteen:       Sufficiency of the evidence

Ground Fifteen:        Constitutionality of Proper's registration requirements

ECF No. 19.

After receiving an extension of time, Respondents filed an answer to the Petition in which they maintain that all grounds for relief are without merit and that most are procedurally defaulted. ECF No. 19. Proper filed a reply brief, *see* ECF No. 20, rendering this matter ripe for adjudication.

III.    Applicable Legal Standards

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998)). In enacting the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Congress "significantly limited the federal court's power to grant a writ of habeas corpus." *Tolbert v. Ferguson*, 2019 WL 4677357 at *2 (E.D. Pa. Aug. 8, 2019). Under § 2254, a district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). Moreover, federal courts must give considerable deference to determinations made by state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010). Thus, if a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d). It is the habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts. *Moreno v. Ferguson*, 2019 WL 4192459, at *3 (W.D. Pa. Sept. 4, 2019).

The United States Court of Appeals for the Third Circuit has emphasized the heavy burden habeas petitioners bear, noting that "even 'clear error'" by the state courts "will not suffice." *Orie v. Sec. Pa. Dept. of Corrections*, 940 F. 3d 845, 850 (3d Cir. 2019). Rather, the state court must be wrong "beyond any possibility for fair-minded disagreement." *Id.* (citations and some internal quotations omitted). Moreover, the factual determinations of the state courts are presumed correct. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.").

IV.     Analysis and Discussion

A.      Timeliness

Before the Court can address the merits of Proper's petition, it must first decide whether it was timely filed. *Romansky v. Superintendent Green SCI*, 933 F.3d 293, 298 (3d Cir. 2019). Pursuant to AEDPA, a state prisoner must file his federal habeas claims within one year of the date his judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A). Because he did not seek direct review from the Pennsylvania Supreme Court, Proper's sentence became final for purposes of the one-year PCRA statute of limitations and the one-year federal habeas statute of limitations on August 21, 2014, 30 days after the Pennsylvania Superior Court affirmed his conviction and sentence. *See* 28 U.S.C. § 2244(d)(1)(A) (the one-year federal limitations period generally begins on the date the petitioner's judgment of sentence became final "by the

conclusion of direct review or the expiration of the time for seeking such review"); Pa. R. App.

P. 1113(a) ("[A] petition for allowance of appeal shall [generally] be filed . . . within 30 days

after the entry of the order of the Superior Court or the Commonwealth Court sought to be

reviewed."). When Proper filed his PCRA petition on September 5, 2014, the one-year habeas

statute was "immediately tolled." *Nelson v. Superintendent of SCI-Retreat*, 2019 WL 897296 *2

n.4 (E.D. Pa. Jan. 31, 2019). At that point, only sixteen days of the limitations period had

expired. Proper's PCRA petition remained pending in the state court system until June 5, 2017,

when the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal.

Consequently, the instant 2254 petition, filed approximately two months later, was timely by

almost ten months.

     B.    Exhaustion and Procedural Default

     As a general matter, a federal district court may not consider the merits of a habeas

petition unless the petitioner has "exhausted the remedies available" in state court. *See* 28

U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A petitioner satisfies

the exhaustion requirement "only if [he or she] can show that [they] fairly presented the federal

claim at each level of the established state-court system for review." *Holloway v. Horn*, 355

F.3d 707, 714 (3d Cir. 2004). The purpose of the exhaustion requirement is to "give the state

courts a full and fair opportunity to resolve federal constitutional claims before those claims are

presented to the federal courts ... by invoking one complete round of the State's established

appellate review process." *O'Sullivan*, 526 U.S. at 845.

     In order to "fairly present" a claim for exhaustion purposes, the petitioner must advance

the claim's "factual and legal substance to the state courts in a manner that puts them on notice

that a federal claim is being asserted." *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268,

280 (3d Cir. 2018) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA proceedings. *O'Sullivan*, 526 U.S. at 845. Either way, the petitioner must present his federal constitutional claims "to each level of the state courts empowered to hear those claims." *Id.* at 847 ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"). "Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied." *Stoss v. Estock*, 2019 WL 2160464, at *3 (M.D. Pa. May 17, 2019) (citing *Castille v. Peoples*, 489 U.S. 346, 350 (1989)).

An important corollary to the exhaustion requirement is the doctrine of procedural default. "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of those claims "in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Procedural default intertwines with exhaustion in the following manner: when a claim has never been "'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied" due to the lack of available state process, but the claims "are considered to be procedurally defaulted." *McKenzie v. Tice*, 2020 WL 1330668, at *5 (M.D. Pa. Mar. 23, 2020) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). Such claims may not ordinarily be reviewed by a federal court. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) ("[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule.") (citations omitted).

Several caveats exist. First, "[a] state procedural rule can preclude federal habeas corpus review" only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *McKenzie*, 2020 WL 1330668, at *5 (quoting *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007)). A rule is "independent" if it is not "'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims." *Id.* (quoting *Johnson v. Pinchak*, 392 F.3d 551, 557 (3d Cir. 2004)). A rule is "adequate" if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default." *Levya*, 504 F.3d at 366 (quoting *Szuchon v. Lehman*, 273 F.3d 299, 372 (3d Cir. 2001)).

Second, a petitioner can overcome procedural default, thereby permitting federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To demonstrate cause and prejudice, the petitioner must show some objective factor external to the defense that impeded counsel's efforts to comply with a state procedural rule. *Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To demonstrate a fundamental miscarriage of justice, a habeas petitioner must typically show actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324-26 (1995).

Applying these principles, the Court concludes that most of the grounds for relief raised in Proper's Petition are procedurally defaulted. For purposes of this analysis, the Court will group similarly postured claims together for collective disposition.

1. Grounds One (b), Two (b), Ten, Eleven, Twelve, Thirteen and Fifteen

In portions of his first and second grounds for relief, Proper alleges that appellate counsel failed to challenge the inconsistency of the victim's pre-trial statements on direct appeal. In his tenth, eleventh, twelfth, thirteenth, and fifteenth grounds for relief, Proper alleges the unconstitutionality of the Pennsylvania sex offender registration requirement, the existence of a secret exculpatory tape recording, improper redaction of trial transcripts, and that the trial court should not have allowed his original attorney to withdraw so close to trial. Proper did not raise any of these claims at any point during his state court proceedings.

As noted above, claims must be "fairly presented to the state courts" for "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Castille*, 489 U.S. at 351. Because Proper did not raise any of these claims on direct appeal or in his PCRA petition, they have never been "fairly presented." Moreover, because state court review of these claims is now barred by the one-year PCRA statute of limitations, they are procedurally defaulted. *See, e.g.*, *Hawes v. Mahalley*, 2020 WL 1508267, at *3 (M.D. Pa. Mar. 30, 2020) (acknowledging that the PCRA statute of limitations "is an 'adequate' and 'independent' state procedural rule which is consistently applied") (quoting *Doctor v. Walters*, 96 F.3d 675, 684 (3d Cir. 1996)).

Proper can overcome this procedural default by demonstrating either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Aside from general averments of incompetence and misconduct, Proper advances no compelling argument to establish that a fundamental miscarriage of justice will occur if this

Court does not consider his claims.[3]  Instead, Proper appears to assert that cause exists to overcome his procedural default because he "told his attorneys" of the issues underlying these grounds for relief but "they wouldn't listen." ECF No. 7 at 12.  Proper cites two specific instances: attorney Parsons' failure to raise issues one(b) and two(b), ten, eleven, twelve, thirteen, and fifteen on direct appeal, *see* ECF No. 7 at 12 and ECF No. 20 at 4, and attorney Sibley's failure to appeal all of the issues raised in his PCRA petition to the Superior Court, *see* ECR No. 20 at 4.

The United States Supreme Court has recognized that, in certain circumstances, counsel's ineffectiveness in failing to properly preserve claims for review in state court may suffice to constitute "cause" to excuse a procedural default. *See Carrier*, 477 U.S. at 488-89.  However, "a claim of ineffective assistance" must generally "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *See id.* at 489.  In other words, to overcome appellate counsel's failure to raise specific issues on direct appeal, Proper needed to present the state PCRA court with an independent claim that appellate counsel rendered ineffective assistance by failing to appeal those precise issues.  He failed to do so.  Nor does Proper argue in the instant Petition that PCRA counsel Kirtland rendered ineffective assistance by failing to raise these claims, in his PCRA petition. *See, e.g., Mable v. Garman*, 2020 WL 1320699, at *7 (M.D. Pa. Mar. 20, 2020) (a plaintiff relying on the

_____

[3] To establish a "miscarriage of justice" for purposes of overcoming procedural default, the petitioner must present evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995).  The "miscarriage of justice" exception only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schulp*, 513 U.S. at 316.  Based on the Court's review of Proper's arguments and the trial record, there is no question that this is not the type of extraordinary case in which he can overcome the default of his claims by way of the miscarriage of justice exception.

ineffective assistance of appellate counsel to establish cause and prejudice for the default of unraised claims must have raised appellate counsel's ineffectiveness in his PCRA petition). In the absence of any such showing, Proper has failed to establish cause and prejudice for his default. Accordingly, grounds one(b), two(b), ten, eleven, twelve, thirteen and fifteen cannot be reviewed in the instant proceeding and must be dismissed.

2. Grounds One (a), Two (a), Three, Five, Six, Seven, and Nine

With respect to portions of Proper's first and second grounds for relief, as well as his third, fifth, sixth, seventh, and ninth grounds for relief, Proper alleges that trial counsel failed to present any defense or evidence, refused to discuss character or alibi witnesses, and declined to evaluate the victim's competence to testify or present evidence of the victim's motive to lie. Proper also alleges that his sentence violated the United States Supreme Court's decision in *Alleyne v. United States*. Proper identified these grounds for relief in his PCRA petition but failed to appeal them to the Superior Court. As a result, they have not been fairly presented to the state courts for one full round of review. *See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004) (explaining that, for habeas claims in Pennsylvania to be exhausted, the claims must have been presented to both the PCRA court and the Superior Court). And, because Proper is now time-barred from pursuing that appeal, those claims are procedurally defaulted. *Harper v. Wingard*, 2020 WL 1532288, at *9 (W.D. Pa. Mar. 31, 2020) (claims raised in a PCRA petition but abandoned on appeal to the Superior Court are procedurally defaulted).

Again, Proper has not advanced any compelling argument to establish that a fundamental miscarriage of justice will occur if this Court does not consider these claims. Moreover, while Proper does argue that attorney Sibley performed deficiently by failing to raise these claims in his PCRA appeal, the exception created in *Martinez v. Ryan*, 566 U.S. 1 (2012), does not apply

to claims that *appellate* PCRA counsel rendered ineffective assistance.[4] *See, e.g., Deep v. Wingard*, 2020 WL 908259, at *12 (W.D. Pa. Feb. 25, 2020) ("*Martinez* only serves as cause to excuse the procedural default of a trial counsel claim of ineffectiveness based only upon the ineffectiveness of PCRA trial counsel and not by any ineffectiveness engaged in by PCRA appellate counsel."); *Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015) ("*Martinez* made very clear that its exception . . . applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals."); *McKenzie*, 2020 WL 1330668, at *8 (reiterating that *Martinez* does not apply where appellate PCRA counsel ineffectively fails to appeal issues raised in the initial PCRA proceeding). Consequently, Proper has also failed to show cause and prejudice. As a result, Proper's first, second, third, fifth, sixth, seventh and ninth grounds for relief are procedurally defaulted and cannot be reviewed by this Court.

 C. Merits

Having disposed of those claims which are procedurally defaulted, three claims remain for review on the merits. Each will be analyzed in turn.

 1. Ground Four: IATC based on failure to impeach victim statements

Proper contends that trial counsel rendered ineffective assistance by failing to aggressively cross-examine the victim concerning the number of times that he allegedly assaulted her. The Pennsylvania Superior Court addressed this claim of ineffectiveness on the merits. Consequently, the Court must view this claim through AEDPA's highly deferential lens.

In addressing Proper's ineffective assistance of counsel claims, the Superior Court and PCRA court each applied the three-pronged test for ineffective assistance of counsel originally

---

[4] In *Martinez*, the United States Supreme Court held that claims of ineffective assistance of post-conviction relief counsel could serve as cause to excuse the procedural default of a claim of trial counsel's ineffectiveness.

set forth in *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987) (the "*Pierce* standard"). *See* ECF No. 7 at 23-24 (Superior Court); at 37-38 (PCRA court). The Superior Court, for example, stated that a claimant establishes ineffective assistance of counsel "when he demonstrates that: (1) the underlying claim is of arguable merit; (2) that counsel's action or inaction was not grounded on any reasonable basis designed to effectuate the appellant's interest; and finally, (3) that counsel's action or inaction was prejudicial to the client." ECF No. 7 at 23 (quoting *Commonwealth v. O'Bidos*, 849 A.2s 243, 249 (Pa. Super. Ct. 2004)). The Court of Appeals for the Third Circuit has held that this precise language comports with the "clearly established" federal standard governing ineffective assistance of counsel claims set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See, e.g., Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *Tyma v. District Atty. Of Allegheny Cty.*, 2019 WL 7207302, *8 (W.D. Pa. Dec. 27, 2019) ("The *Pierce* standard has been found to be materially identical to the test enunciated in *Strickland v. Washington*"). Hence, the Superior Court did not apply a rule of law that is "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *See Werts*, 228 F.3d at 204; *Tyma*, 2019 WL 7207302, at *8.

Nor was the Superior Court's adjudication an "unreasonable application" of the *Strickland* standard or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1), (2); *Jacobs v. Horn*, 395 F.3d 92, 107 n. 9 (3d Cir. 2005). Under the "unreasonable application" prong of § 2254(d), the appropriate inquiry is whether the Pennsylvania courts' application of *Strickland* to Proper's ineffectiveness claim "was objectively unreasonable, *i.e.*, the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland*." *Werts*, 228 F.3d at 204. Because the state

courts addressed Proper's claim of ineffectiveness on the merits, two layers of deference apply to the state courts' determination:

> The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Premo v. Moore*, 562 U.S. 115, 122-23 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted)). In other words, "[f]ederal habeas review of ineffective assistance of counsel claims is . . . 'doubly deferential'" because federal habeas courts "'take a highly deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of § 2254(d).'" *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013).

In rejecting Proper's criticism of his trial attorney's cross-examination performance, the Superior Court noted that trial counsel had articulated a reasonable trial strategy: that the victim and her mother made up the charges in order to force Proper to move out of the house. ECF No. 7 at 28. Counsel testified that he couldn't aggressively cross-examine the victim because of her age and disability, but that he obtained several statements designed to portray her to the jury as someone who might have "made all this up." *Id.* at 29. Counsel elected not to attack the inconsistencies regarding the number of assaults (the victim testified to two instances of assault, but had previously supplied a written statement alleging that three and five assaults had occurred) because he feared she might suddenly "remember" the other assaults and share prejudicial details with the jury. *Id.* at 30-31. The Superior Court characterized this is a "sound

and reasonable strategy for cross-examining the victim" given the victim's age and the risk of an additional three sexual assaults being revealed to the jury. *Id.* at 31.

The United States Supreme Court has emphasized that "even a strong case for [habeas] relief does not mean the state court's contrary conclusion was unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Rather, a petitioner must show "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Here, Proper's ineffective assistance claim is neither "strong" nor "beyond any possibility for fairminded disagreement." To the contrary, a careful review of the state court record reveals that the Superior Court applied the *Strickland* standard to the facts at hand in a fair and reasonable manner. Proper cites no Supreme Court decision warranting a different outcome or which the Superior Court unreasonably applied. Accordingly, habeas relief is unwarranted as to this claim.

2. Ground Eight: IATC based on failure to permit Proper to testify

Proper next contends that trial counsel rendered ineffective assistance by "ineptly advising Defendant about his right to testify" and failing to explain "the consequences of not testifying and the rights the Defendant was giving up." ECF No. 7 at 16. Again, the Superior Court adjudicated this claim on the merits by applying the state court equivalent of the *Strickland* standard. *See id.* at 23-24. Consequently, this Court's review is "doubly deferential" under AEDPA and *Strickland*. *Grant*, 709 F.3d at 232.

In reviewing this claim, the Superior Court noted that the decision to testify on one's own behalf "is ultimately to be made by the accused after full consultation with counsel." ECF No. 7

at 24 (quoting *Commonwealth v. Preston*, 613 A.2d 603, 605 (Pa. Super. Ct. 1992)).  To prevail

on such a claim, the petitioner must show that "counsel interfered with his client's freedom to

testify, or . . . gave specific advice so unreasonable as to vitiate a knowing and intelligent

decision by the client not to testify in his own behalf."  *Id.*  The Superior Court held that this

standard had not been met for two reasons.  First, the trial record contained a "thorough and

probing colloquy" during which the trial court informed Proper of his absolute right to testify on

his own behalf.  *See* ECF No. 7 at 24.  After the trial court explained this right, Proper knowingly

and affirmatively waived it on the record:

| | |
|---|---|
| The Court: | Do you realize that you not testifying is a trial strategy decision?  In other words, it's a decision you're making as part of your trial strategy? |
| [Proper]: | Yes sir, yeah. |
| The Court: | Alright, after having discussed this trial strategy with your attorney, have you decided that you do want to or do not want to testify? |
| [Proper]: | I do not want to testify. |
| The Court: | Alright, after having discussed this strategy decision with your attorney, have you concluded that testifying is in your – or not testifying is in your best interest? |
| [Proper]: | Yes it is, yep. |
| The Court: | Alright, and you do this of your own choice? |
| [Proper]: | Right. |

ECF No. 7 at 25-26.

Second, the PCRA court and Superior Court each credited trial counsel's testimony that

Proper performed so poorly during mock cross-examination that Proper decided it was not in his

best interest to testify.  As recounted above, Proper struggled to explain numerous incriminatory

statements that he had made to Officer Daley during a prior interview.  Counsel feared that the

entire video of that interview might be played for the jury if Proper took the stand.  According to

the Superior Court, this fear provided "a reasonable basis for advising [Proper] not to testify."
ECF No. 7 at 27.

Based on the foregoing, the Court readily concludes that the state court's decision comported with *Strickland*. The Superior Court reasonably determined that even if Proper had testified at trial, the evidence he faced, including the statements to Officer Daley that might have been revealed to the jury, would not have permitted a reasonable probability that the outcome of his trial would have been different. *Strickland*, 466 U.S. at 694-95. Proper has made no attempt to address the reasoning of the Superior Court or cited to any United States Supreme Court precedent that would justify a contrary finding in this Court. Proper's request for habeas relief must be denied.

### 3. Ground Fourteen: sufficiency of the evidence

Finally, Proper challenges the sufficiency of the evidence relied upon to support his conviction. He argues:

> [I]n this case there is no physical evidence as stated by forensic doctor Mary Carrasco. If these [crimes] would have happened 3 to 5 times as stated by the alleged victim or even 2 times as testified there would be physical evidence [such] as tears that would last for years. But there was no evidence of such. Hymen would be torn leaving scars.

ECF No. 7 at 18. Because the Superior Court denied this claim on its merits on direct appeal, AEDPA's deferential standard of review applies. Proper must show that the state courts' adjudication of this claim was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

The "clearly established Federal law" governing sufficiency of the evidence claims is set forth in the United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979). Under *Jackson*, evidence is sufficient to support a conviction if, "after reviewing the evidence in

the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (quoting *Jackson*, 443 U.S. at 319).

In rejecting Proper's sufficiency of the evidence claim, the Superior Court applied the Pennsylvania equivalent of the *Jackson* standard. *See* ECF No. 7 at 58. *See also Evans v. Court of Common Pleas, Delaware Cnty.*, 959 F.2d 1227, 1233 (3d Cir. 1992) (noting that the test for sufficiency of the evidence is the same under both Pennsylvania and federal law). Because the Superior Court applied the correct legal standard, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1). *See, e.g., Williams*, 529 U.S. at 405-06. Therefore, the only remaining question is whether the Superior Court's decision amounted to an "unreasonable application" of *Jackson*. To this end, the United States Supreme Court has made clear that:

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury … to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the [trial court's] verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the [trial court]." *Cavazos v. Smith*, 565 U.S. 1 (2011). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S.766 (2010)).
>
> - - -
>
> [T]he only question under *Jackson* is whether [the state court's] finding was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d).

*Coleman*, 566 U.S. at 651, 656.

Here, the evidence at trial consisted of, among other things, testimony from the victim, her mother, and the investigating police officer. As recounted above, the victim supplied detailed testimony concerning the alleged sexual assaults. The victim's mother and Officer Daley each corroborated that the victim's testimony at trial comported with her prior statements. Officer Daley testified that Proper, during interrogation, had admitted that sexual contact may have occurred (although he couldn't be certain due to his frequent intoxication) and that oral sexual contact "probably" happened (although, again, Proper couldn't say for certain).

Proper does not appear to argue that the state court's reliance on this testimony "was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656. Instead, he argues that there was no physical evidence to support the charges against him because there were no tears or scars on the victim's hymen. But, "merely pointing to contrary evidence is not sufficient to meet his burden on an insufficiency of the evidence claim." *Harper*, 2020 WL 1532288, at *9 (quoting *McClendon v. Singh*, 2013 WL 669748, at *10 (N.D. Cal. Feb. 25, 2013) ("Petitioner's argument does no more than point to a conflict in the evidence that the jury was entitled to decide, which evidentiary dispute is insufficient to establish the knowing use of false evidence.")). Rather, Proper must show "that there is no evidence that would support a rational juror finding he was the perpetrator." *Id.* As the recitation of the facts by the state courts well demonstrates, Proper has failed to meet this burden. Accordingly, no habeas relief is warranted.

V.     Certificate of Appealability

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate

that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, "a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Here, the Court concludes that jurists of reason would not find it debatable whether each of Petitioner's claims should be denied for the reasons given herein. Accordingly, a certificate of appealability will be denied.

VI.    Conclusion

For the reasons set forth herein, Proper's Petition is denied, and no certificate of appealability should issue. It is so Ordered.[5]

RICHARD A. LANZILLO
United States Magistrate Judge

Dated: April 9, 2020

---

[5] Given this disposition, Petitioner's Motion to Modify Sentence [ECF No. 33], Motion to Dismiss Charges [ECF No. 35], and Motion for Writ of Mandamus [ECF No. 36] are each denied as moot.